# ILLINOIS OFFICIAL REPORTS

## Supreme Court

***People v. Johnson*, 2011 IL 111817**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. AMOS JOHNSON, Appellant. |
| Docket No. | 111817 |
| Filed | December 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The DNA analysis charge imposed on all convicted felons is compensatory to the State and is not a "fine" which may be reduced by the $5 per day statutory credit against fines for each day of presentence incarceration. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Jorge Luis Alonso, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Jessica Wynne Arizo and Brett Zeeb, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Manny Magence, Assistant State's Attorneys, of counsel), for the People.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    At issue in this case is whether the $200 DNA Identification System analysis charge (hereinafter, DNA analysis charge or DNA charge) is subject to offset by defendant Amos Johnson's presentence incarceration credit. The appellate court held that it was not. No. 1-09-1398 (unpublished order under Supreme Court Rule 23). We allowed defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010); R. 612 (eff. Sept. 1, 2006)), and now affirm the judgment of the appellate court.

¶ 2                          I. BACKGROUND

¶ 3    Defendant, originally charged with two counts of possession of a controlled substance with intent to deliver, was found guilty, after a bench trial in the circuit court of Cook County, of two counts of the lesser-included offense of possession of a controlled substance. Defendant was in custody for 344 days before he was sentenced.

¶ 4    At sentencing, defendant received an extended term of five years' imprisonment. The court also ordered the indexing of defendant's DNA, and imposed several monetary charges, including a $200 DNA analysis charge pursuant to section 5-4-3(j) of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-4-3(j) (West 2008)).

¶ 5    On appeal, the appellate court affirmed defendant's convictions and sentence of imprisonment, but modified his fines and fees order with regard to a $5 court system fee and a $30 children's advocacy center charge. The court declined to modify the order with regard to the $200 DNA analysis charge, which the court held was not subject to offset by defendant's presentence incarceration credit. No. 1-09-1398 (unpublished order under Supreme Court Rule 23).

¶ 6                                     II. ANALYSIS

¶ 7        Before this court, defendant does not challenge his convictions or sentence of imprisonment. The sole issue he raises is a narrow one: whether he is entitled to the statutory offset, which is dependent on whether the DNA charge falls within the definition of a "fine."

¶ 8        Section 110-14 of the Code of Criminal Procedure provides, in pertinent part: "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2008). The parties do not dispute that the credit under section 110-14 operates to offset only fines. This is in accord with the plain language of the statute, which indicates the credit applies only to "fines" imposed pursuant to a conviction, not to any other court costs or fees. *People v. Tolliver*, 363 Ill. App. 3d 94, 96 (2006); see *People v. Jones*, 223 Ill. 2d 569, 580 (2006).

¶ 9        Before we begin our analysis, we believe it would be helpful in understanding this case to provide an overview of the DNA database statute. Section 5-4-3 of the Corrections Code provides, *inter alia*, that any person convicted or found guilty of any offense classified as a felony under Illinois law must submit specimens of blood, saliva, or tissue to the Illinois State Police for DNA analysis. The primary purpose of section 5-4-3 is the creation of a criminal DNA database of the genetic identities of recidivist offenders. *People v. Marshall*, 242 Ill. 2d 285, 291 (2011).

¶ 10       Section 5-4-3(j), the specific provision at issue here, provides, in pertinent part:

           "(j) Any person required by subsection (a) [of section 5-4-3] to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200." 730 ILCS 5/5-4-3(j) (West 2008).

¶ 11       Section 5-4-3(k)(1) establishes a State Offender DNA Identification System Fund (Fund), "a special fund in the State Treasury." 730 ILCS 5/5-4-3(k)(1) (West 2008). Section 5-4-3(k)(2), in turn, requires circuit court clerks to deposit the DNA analysis assessments into the Fund, less $10 from each collected assessment to offset administrative costs in carrying out the clerk's responsibilities under section 5-4-3. 730 ILCS 5/5-4-3(k)(2) (West 2008).

¶ 12       Moreover, section 5-4-3(k)(3) provides that the Fund is for the exclusive use of the state's crime laboratories, to be applied to costs such as, but not limited to, those incurred in: (1) providing analysis and genetic marker categorization; (2) maintaining genetic marker groupings; (3) purchasing and maintaining equipment for use in performing analyses; (4) continuing research and development of new techniques for analysis and genetic marker categorization; and (5) continuing education, training, and professional development of forensic scientists.

¶ 13       DNA database statutes such as section 5-4-3 are not unique to Illinois. Every state has enacted a statute creating a DNA database for use in solving various classes of crimes. Robin Cheryl Miller, Annotation, *Validity, Construction, and Operation of State DNA Database Statutes*, 76 A.L.R.5th 239 (2000). A survey of such statutes indicates they are founded on certain basic views, which inform their goals: DNA databases are important tools in criminal

investigations, in the exclusion of individuals who are the subject of investigations or prosecutions, and in detecting recidivist acts.

¶ 14 Views such as these were discussed in the Illinois General Assembly during debates on amendments to section 5-4-3:

"[I]f I were incarcerated, I would want the DNA sample so that if they come after me upon my release and say, you know[,] this crime looks a lot like your modus, your method of operation, we think you're a suspect in this crime. I'm going to assume that they find DNA at the crime scene[,] and if I'm already in the database, it's a heck of a good way to eliminate someone as a suspect." 92d Ill. Gen. Assem., House Proceedings, May 14, 2002, at 46 (statements of Representative Black).

¶ 15 With this statutory background in mind, we turn to the issue before us: whether the DNA analysis charge is a fine for purposes of presentence incarceration credit. This court has not addressed this issue, which is a matter of statutory interpretation. The construction of a statute is a question of law, which is reviewed *de novo*. *Jones*, 223 Ill. 2d at 580; *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). This court's primary objective when construing the meaning of a disputed statute is to ascertain and give effect to the intent of the legislature. *People v. Williams*, 239 Ill. 2d 503, 506 (2011); *Jones*, 223 Ill. 2d at 580; *Robinson*, 172 Ill. 2d at 457.

¶ 16 "A 'fine' is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense." 19 Ill. L. and Prac. *Fines, Forfeitures and Penalties* § 2 (2009). It is also defined as a "pecuniary penalty," with this *caveat*: "The word 'penalty' is broader than [the] word 'fine,' which is always a penalty; whereas, a penalty may be a fine or it may designate some other form of punishment." Black's Law Dictionary 759 (4th ed. 1951).

¶ 17 The State argues, pointing to *People v. Marshall*, 242 Ill. 2d 285 (2011), that the DNA analysis charge is compensatory rather than punitive, and is not a fine. The issue in *Marshall* was whether, under section 5-4-3, a trial court could order a defendant to submit a DNA sample and pay the $200 DNA analysis charge where that defendant had already submitted a DNA sample pursuant to a prior conviction and paid a corresponding analysis charge. As *Marshall* pointed out, our appellate court was split on this issue, with some decisions holding that only one DNA sample and one $200 analysis fee were required, and other decisions reaching the opposite conclusion. *Id*. at 293-94.

¶ 18 *Marshall* concluded section 5-4-3 "authorizes a trial court to order the taking, analysis and indexing of a qualifying offender's DNA, and the payment of the analysis fee only where that defendant is *not* currently registered in the DNA database." (Emphasis added.) *Marshall*, 242 Ill. 2d at 303. In support, *Marshall* quoted with approval the analysis in *People v. Rigsby*, 405 Ill. App. 3d 916 (2010), which stated in pertinent part:

" 'A one-time submission into the police DNA database is sufficient to satisfy the purpose of the statute in creating a database of the genetic identities of recidivist criminal offenders ***. [Citation.]

Moreover, since the analysis fee is intended to cover the costs of the DNA analysis, and only one analysis is necessary per qualifying offender, then by extension only one analysis fee is necessary as well.' " *Marshall*, 242 Ill. 2d at 296-97 (quoting

*Rigsby*, 405 Ill. App. 3d at 919).

¶ 19　*Marshall* establishes, first, that the DNA analysis charge clearly is compensatory. It is intended to cover the cost of analyzing the offender's DNA, and therefore is paid only once. As *Marshall* stated: "[T]he $200 analysis fee set forth in section 5-4-3(j) 'shall' be paid only when the actual extraction, analysis and filing of a qualified offender's DNA occurs." *Id*. at 297. The DNA charge thus seeks to compensate the state for professional services. This is not a punitive purpose. See *Jones*, 223 Ill. 2d at 581 (quoting *People v. White*, 333 Ill. App. 3d 777, 781 (2002)).

¶ 20　Second, the fact that the DNA charge is imposed only once strongly suggests it is not punitive. As the State asserts: "[I]f the DNA [charge] were punitive, it would be assessed each time a defendant is convicted, rather than being limited to a single assessment."

¶ 21　As noted at the outset of our analysis, DNA database statutes are not unique to Illinois, and all states have enacted legislation establishing such databases. Our conclusion that the DNA charge here is not punitive finds support in decisions of our sister states, particularly *State v. Brewster*, 218 P.3d 249 (Wash. Ct. App. 2009), which deals with Washington's DNA database statutory scheme.

¶ 22　Section 43.43.754 of the Revised Code of Washington, similar to Illinois' statute, provides that a biological sample must be collected for purposes of DNA identification analysis from, *inter alios*, "[e]very adult or juvenile individual convicted of a felony." Wash. Rev. Code § 43.43.754(1)(a) (2006). The biological samples, which are retained by the forensic laboratory services bureau, are to be used "solely for the purpose of providing DNA or other tests for identification analysis and prosecution of a criminal offense or for the identification of human remains or missing persons." Wash. Rev. Code § 43.43.754(4) (2006). Results derived from the biological samples may be submitted to the FBI's combined DNA index system. *Id*.

¶ 23　A separate provision imposes a DNA collection fee: "Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars." Wash. Rev. Code § 43.43.7541 (2006). This fee serves to fund the collection of samples and the maintenance and operation of DNA databases. *Brewster*, 218 P.3d at 251.

¶ 24　The issue in *Brewster* was whether the saving statute (Wash. Rev. Code § 10.01.040 (2002)) applied to the state's DNA collection charge provision (Wash. Rev. Code § 43.43.7541 (2006)). Section 10.01.040's saving clause applies only to criminal and penal statutes. Therefore, the question was whether the DNA charge was punitive. *Brewster*, 218 P.3d at 251. In answering this question in the negative, the court examined (1) the legislature's purpose in adopting the law authorizing the DNA charge, and (2) the statute's "actual effect."

¶ 25　With regard to the statute's purpose, the court stated:

> "The DNA collection fee serves to fund the collection of samples and the maintenance and operation of DNA databases. The legislature has repeatedly found that DNA databases are important tools in criminal investigations, in the exclusion of individuals who are the subject of investigation or prosecution, and in detecting recidivist acts. The databases also facilitate the identification of missing persons and

unidentified human remains. *These are not punitive purposes*." (Emphasis added.) *Brewster*, 218 P.3d at 251.

¶ 26 The court then considered whether the actual effect of the statute was so punitive as to negate the legislature's regulatory intent. Factors considered included:

> " 'Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment–retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.' " *Brewster*, 218 P.2d at 251 (quoting *State v. Ward*, 869 P.2d 1062, 1068 (Wash. 1994)).

After considering these factors, *Brewster* stated:

> "The DNA fee is a legal financial obligation. Its purpose is monetary, rather than retributive or deterrent. Such obligations have historically not been regarded as punishment. The fee does not define or punish criminal behavior and does not require a finding of scienter. It does not involve a disability or restraint. The amount of the fee is fixed and does not depend on the gravity of the offense, and is not excessive in relation to its purpose. *The DNA collection fee is not punitive*." (Emphasis added.) *Brewster*, 218 P.3d at 251.

¶ 27 *Brewster*'s assertions regarding the purpose and effect of Washington's DNA collection charge are largely applicable to the DNA analysis charge in the case at bar. We find *Brewster* informative and persuasive as to the question here: whether the section 5-4-3(j) DNA charge is a fine for purposes of presentencing credit.

¶ 28 For the reasons set forth above, we conclude the DNA analysis charge is not punitive. It is a one-time charge intended to cover the cost of analyzing the DNA sample submitted by the qualifying offender (see *Marshall*, 242 Ill. 2d at 296-97, 303) and is therefore compensatory. Though imposed at sentencing, it does not serve to punish a defendant in addition to the sentence he received. The $200 DNA charge is not a fine, and therefore it is not subject to offset by the section 110-14 presentence incarceration credit.

¶ 29                                    III. CONCLUSION

¶ 30 For the reasons set forth above, we affirm the judgment of the appellate court.

¶ 31 Affirmed.